UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIMOTHY RIKKERS,

        Plaintiff,

    v.                                                        Case No. 17-cv-1208-bhl

MENARD INC,

        Defendant.

---

## ORDER GRANTING SUMMARY JUDGMENT

---

      This case presents a math problem masquerading as a lawsuit. Experts have weighed in, numbers have been crunched, and Plaintiff Timothy Rikkers has reached a disturbing conclusion: Menards' celebrated "11% Rebate Sales" actually result in an effective rebate rate of only 9.59%. Consumers have not suffered such a comparably sharp sting of betrayal since 2013, when an Australian teen measured his Subway footlong and discovered that it was only 11 inches. *See In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*, 869 F.3d 551, 552 (7th Cir. 2017). As with the plaintiffs in *Subway*, Rikkers seeks to certify a class of defrauded customers. Defendant, Menard, Inc., rejects allegations of impropriety and moves for summary judgment. Because the term "rebate" contemplates Defendant's practices, the motion will be granted.

### FACTUAL BACKGROUND[1]

      Menards is a Wisconsin home improvement company headquartered in Eau Claire. (ECF No. 74 at 1.) It operates over 300 stores in 14 states across the Midwest. (*Id.*) Since 2011, the company has regularly run an "11% Rebate Sales" program. (*Id.* at 2.) During applicable periods, customers can claim an 11% rebate on their purchases by filling out a rebate form, mailing the

---

[1] These facts are drawn from the parties' proposed statements of undisputed facts (and responses) (ECF Nos. 74, & 84 at 3-4), as well as the Complaint (ECF No. 1). Disputed facts are viewed in the light most favorable to the non-moving party.

form to an Elk Mound P.O. Box appropriately named "Save 11%," and waiting to receive an in-store "credit check." (ECF No. 1 at 8 & ECF No. 74 at 10.)

On August 21, 2017, Timothy Rikkers heard a Menards' radio advertisement promoting an active 11% rebate sale. (ECF No. 84 at 3.) Remembering that he needed to buy exterior lights for his girlfriend's rental property, Rikkers decided to take advantage of the rebate and visited Menards' Madison West store. (*Id.*) At some point before he completed his transaction, Rikkers learned that the rebate required him to mail in a form and wait six to eight weeks for his credit check. (*Id.* at 4.)

After making his purchases, Rikkers received a rebate receipt setting forth the value of his rebate—$21.32—which represented 11% of the total sale price of his purchases ($193.82), before taxes. (*Id.*) Later that same day, Rikkers filled out a rebate form and mailed it to Menards. (*Id.*) Less than four weeks later, on September 15, 2017, Menards issued Rikkers a merchandise credit check good for $21.32. (*Id.*) The check had no expiration date and could be used for in-store purchases at any time. (*Id.*)

## SUMMARY JUDGMENT STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Considering tax damages, postage cost damages, and rebate time value damages, Plaintiff alleges he and putative class members received a 9.59% rebate rather than the promised 11%. Thus, he claims Menards is liable for: (1) untrue, deceptive, and misleading statements in violation of Wis. Stat. §§100.8(1) and (9)(a); (2) insufficient commercial disclosure in violation of Wis. Stat. §100.195(2); (3) unjust enrichment; (4) intentional and strict responsibility misrepresentation; and (5) illegal price comparisons in violation of ATCP §124.03(1) and Wis. Stat. §100.20(2)(a).

Plaintiff asserts that his case hinges on "[w]hether Menards ever discloses the rebate isn't really 11%." (ECF No. 73 at 3.) If it does, the case fails. If it does not, Menards' fate lies with the jury. But this clever framing surreptitiously resolves a central question of law in Plaintiff's favor with a flick of the wrist. Lurking in the noumenal space beyond Plaintiff's proposed fulcrum of the case is an advantageously narrow definition of "rebate." That is, Plaintiff presupposes that "rebates" do not and cannot incorporate the costs of taxes, postage, and time value. While he may wish Menards had conceded this point, he is not free to concede it for them. Indeed, because a *mail-in* "rebate" necessarily contemplates such costs, Plaintiff fails to demonstrate pecuniary loss, and summary judgment must be granted.

## I. Plaintiff's Expert Determined Menards' Rebates Had an Effective Rate of Only 9.59%, Not the 11% Represented in Advertisements.

Plaintiff's expert, Dr. Frank Bernatowicz, contends that Menards' 11% rebate calculation "fails to recognize and account for three areas of actual pecuniary damages: (1) Additional Tax Damages; (2) Postage Cost Damages; and (3) Rebate Time Value Damages." (ECF No. 38 at 10.) According to Dr. Bernatowicz:

> Additional Tax Damages logically represent the additional state and local taxes paid by the consumer at the time of purchase under a Menards 11% Rebate Sale (whereby rebate issuance occurs later in time), compared to the amount of state and local taxes that would have been paid by the consumer at the time of purchase where the rebate amount is applied at the time of the corresponding purchase. Postage Cost Damages logically represent the postage cost per rebate transaction, or the price of the stamp(s) required to mail in the rebate form and rebate receipt under a Menards 11% Rebate Sale, compared to not having to incur the postage costs where the rebate amount is applied at the time of purchase. Rebate Time Value Damages logically represents the concept that the rebate benefit available at the time of purchase is worth more than an identical sum in the future (six-to-eight weeks processing allowance per Menards) due to its potential earning (interest) capacity. (*Id.* at 10-11.)

Accounting for these three areas of damages, Dr. Bernatowicz's "analysis shows an ***Effective Rebate amount of 9.59%*** and not the 11% as advertised by Menards[.]" (*Id.* at 10) (emphasis in original).

The data is helpfully provided in neatly constructed exhibits, and the math checks out. *See id.* at 21-38.) But the Court's jurisprudential duty requires more than a simple review of arithmetic. Indeed, Dr. Bernatowicz's numbers rely on Rikkers' preferred definition of "rebate," so they are only as valuable as that definition is precise.

## II. The Term "Rebate" Anticipates Defendant's Program.

Black's Law Dictionary defines a "rebate" as "1. A return of part of a payment, serving as a discount or reduction. 2. An amount of money that is paid back when someone has overpaid." *Rebate*, BLACK'S LAW DICTIONARY (11th ed. 2019). Similarly, Merriam-Webster defines "rebate" as "a return of a part of a payment." *Rebate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rebate (last visited Nov. 1, 2021). Notably absent from these definitions is talk of tax consequences, postage, or accumulated interest. In short, "rebate" is a general term that encompasses more than point of sale refunds. Definitionally, then, an 11% point of sale rebate and an 11% mail-in rebate are both properly cast as returning 11% of a payment, even if the latter is functionally worth less because of extraneous expenses.

It may be helpful to liken a mail-in rebate to the distance of a punt. A punt that travels 50 yards in the air and is returned 10 yards by the opposing team could be called a 50-yard punt or a 40-yard punt. If one inquires about the punt's distance, either answer (50 or 40 yards) is legitimate. Neither misleads nor defrauds the inquisitor. So it is with mail-in rebates. Menards could advertise 11% rebate sales, or it could advertise 9.59% rebate sales. Though one is more aesthetically-pleasing, neither is fraudulent.

The Federal Trade Commission (FTC) agrees with this assessment. "[M]ost rebates are of the mail-in variety. They require consumers to pay the full cost of an item at the time [sic] purchase, then to send documentation to the manufacturer or retailer to receive a rebate by mail." (FTC Consumer Information: Rebates, ECF No. 64-16 at 2.) This means most rebates, whether they be for 5 or 50 percent, are functionally worth slightly less than stated because of peripheral expenses. Yet none of them is subject to liability for that reason alone.

In sum, because "rebate" anticipates and incorporates the external fees associated with a mail-in program, Dr. Bernatowicz's 9.59% effective rate does not represent a fraudulent return on an 11% rebate promise.

### III. All of Plaintiff's Claims Require Proof of Pecuniary Loss. Because He Cannot Show Such Loss, All Claims Must Be Dismissed.

All of Rikkers' claims require proof of pecuniary loss. *See K&S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 732 N.W.2d 792, 802 (Wis. 2007) (finding Wis. Stat. §100.18 "requires a causal connection between the untrue, deceptive, or misleading representation and the pecuniary loss"); Wis. Stat. §100.195(5m)(b) ("Any person suffering pecuniary loss because of a violation of this section may commence an action to recover the pecuniary loss."); *Loeb v. Champion Petfoods USA, Inc.*, 359 F.Supp.3d 597, 605 (dismissing unjust enrichment claim for

failure to raise facts capable of establishing inequity); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004) (holding that all misrepresentation claims require the plaintiff to have "believed and relied on the misrepresentation to his detriment or damage"); Wis. Stat. §100.20(5)[2] ("Any person suffering pecuniary loss because of a violation by any other person of s. 100.70 or any order issued under this section may sue for damages[.]").

In this case, Rikkers has suffered no pecuniary loss because he got exactly what he bargained for. It is undisputed that before he completed his transaction, he knew exactly how Menards' rebate program worked. (ECF No. 84 at 4.) He purchased $193.82 worth of goods. (*Id.*) Eleven percent of $193.82 is $21.32, which is the exact amount awarded on his credit check. (*Id.*) That he incurred incidental expenses in the process of receiving his $21.32 is immaterial. Those expenses are built-in to the definition of "rebate," and their existence cannot be used to demonstrate fraud. Nothing else on the record indicates pecuniary loss. As a result, all of Rikkers' claims must fail.

## CONCLUSION

Plaintiff asks the Court to construe "rebate" in a way that would render mail-in rebate programs (the most popular kind of rebate) fraudulent. But given the choice between invalidating most of America's existing rebate programs or reading "rebate" in commonsense fashion to include the notion of mail-in arrangements, the Court will opt for the latter.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 60) is GRANTED, and the case is DISMISSED. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 8, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

[2] Plaintiff's "price comparison claims" are further barred because they first appeared in his response to Defendant's motion for summary judgment. The complaint, not a motion, was the proper place to raise such claims. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).